```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
RICHARD M. FREEMAN,

                    Appellant,           09 Civ. 7296 (JGK)

          - against -                    OPINION AND ORDER

JOURNAL REGISTER COMPANY, et al.,

                    Appellees.
------------------------------------
```

**JOHN G. KOELTL, District Judge:**

This is a motion by the Journal Register Company ("JRC") and its affiliated reorganized debtors (collectively, the "appellees" or the "Reorganized Debtors") to dismiss the appeal of Richard Freeman (the "appellant"), who is appearing pro se. JPMorgan Chase Bank, N.A., the administrative agent to the prepetition secured lenders, has joined the appellees' motion to dismiss. The appellant is appealing from United States Bankruptcy Judge Allan L. Gropper's July 7, 2009 order, (the "Confirmation Order") confirming the Amended Joint Chapter 11 Plan of Journal Register Company and its Affiliated Debtors (the "Plan"). For the reasons explained below, the Court grants the appellees' motion and dismisses the appeal.

I

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[o]n an appeal [from the bankruptcy court,] the district court ... may affirm, modify, or reverse a bankruptcy

judge's judgment, order, or decree or remand with instructions for further proceedings."  The Court reviews a bankruptcy court's factual findings for clear error, Fed. R. Bank. P. 8013, and its legal conclusions de novo, Nat'l Union Fire Ins. Co. v. Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996).  The Court may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below.  See, e.g., Borrero v. Connecticut Student Loan Found., No. 97 Civ. 1382, 1997 WL 695515, at *1 (D. Conn. Oct. 21, 1997); In re Coronet Capital Co., No. 94 Civ. 1187, 1995 WL 429494, at *3 (S.D.N.Y. July 20, 1995); see also In re Dana Corp., 412 B.R. 53, 56 (S.D.N.Y. 2008).

                                   II

The following facts, unless otherwise noted, are taken from the Bankruptcy Court's July 7, 2009 Memorandum of Opinion confirming the Plan.  See In re Journal Register Co., 407 B.R. 520 (Bankr. S.D.N.Y. 2009).  JRC is a national media company that owns and operates daily newspapers and non-daily publications, news and employment websites, and commercial printing facilities.  Id. at 524.  The appellant is a former stockholder of JRC.

On February 21, 2009, the appellees filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  Id. at 523-

24.  The appellees moved for confirmation of the Plan and filed the related Disclosure Statement on May 6, 2009.  Id. at 524.

There are several relevant aspects of the Plan.  The Plan provided for limited recoveries on the part of both the secured and unsecured creditors.  Although the secured creditors held claims approximating 96% of JRC's total debt, they only recovered 42% of their claims.  Id. at 526.  Additionally, the secured creditors received 100% of the new common stock of the Reorganized Debtor.  Id.  The general unsecured creditors recovered approximately 9% of their claims.  Id.  The Plan provided no recovery to the existing equity interests and cancelled the existing shareholders' stock.  Id.

The secured creditors also agreed to establish a Trade Account Distribution under which they would use a portion of their recoveries to pay certain unsecured creditors in accordance with specific criteria.  Id. at 526-27.  The Plan also established the Post-Emergence Incentive Plan ("Incentive Plan"), which provides bonuses to certain JRC employees if they achieve certain goals established by the Debtors and the Consenting Lenders.  Id. at 527.  The Incentive Plan also provided that up to 10% of the equity of the Reorganized JRC would be reserved for the new Board of Directors and members of management.  (Plan Supp. Agreement Ex. A at 8.)  The Reorganized Debtors also secured exit financing in the form of a $25 million

three-year revolving credit facility.  In re Journal Register, 407 B.R. at 527-28.  This financing provided the Reorganized Debtors with liquidity and working capital.  Id.

Both the secured and unsecured creditors voted overwhelmingly in favor of the Plan.  Id. at 528.  In its Memorandum of Opinion, the Bankruptcy Court addressed the objections of several parties regarding the Trade Account Distribution and the Incentive Plan.  The Bankruptcy Court rejected these objections and found both of these provisions to be valid.  Id. at 531-38.  The appellant also raised the same issues on appeal here before the Bankruptcy Court.  The Bankruptcy Court rejected his objections and noted that it was "not required to amend a plan to provide a recovery to stockholders where the record establishes that the Secured Lenders are undersecured by more than $350 million and the unsecured creditors are receiving only about a 9% recovery."  Id. at 538.

The Bankruptcy Court confirmed the Plan on July 7, 2009.  The effective date of the Plan was August 7, 2009.  (McLaughlin Aff. Ex. 1.)  Since the Effective Date, the Reorganized Debtors have taken numerous steps to consummate the plan.  They have begun to make cash distributions to the holders of allowed secured and unsecured claims.  (McLaughlin Aff. Ex. 2.)  Pursuant to the Plan, the Reorganized Debtors have issued

4

approximately 5 million shares of its common stock to holders of Allowed Secured Lender Claims. (See Mem. of Law in Supp. of Appelleess' Mot. to Dismiss 3.)  A new board of directors has been appointed. (See Mem. of Law in Supp. of Appelleess' Mot. to Dismiss 3.)  Additionally, management agreements have been signed. (See Mem. of Law in Supp. of Appelleess' Mot. to Dismiss 3.)  Key employees also received payments under the Incentive Plan. (See Mem. of Law in Supp. of Appelleess' Mot. to Dismiss 3.)

The appellant timely filed this appeal on September 18, 2009.  However, the appellant did not seek to obtain a stay.  The appellant objects to the Confirmation Order on several grounds: (1) the Incentive Plan is an improper retentive program; (2) the Trade Account Distribution unfairly discriminates among holders of unsecured claims; and (3) the Incentive Plan improperly allows management to receive corporate stock.

On October 5, 2009, the appellees moved to dismiss this appeal.  They argue that the appeal should be dismissed on two grounds: (1) the appellant lacks standing to bring the appeal; and (2) the appeal is equitably moot.

### III

The appellees argue that the appellant lacks standing because he does not have a pecuniary interest affected by the

5

Confirmation Order and he is not representing his own legal rights and interests.  The appellant responds that his interests as a former shareholder of JRC were unfairly impaired by the Confirmation Order.

To have standing to appeal a bankruptcy court order, an appellant must be an "aggrieved person."  Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir. 1997). "[A] party to the bankruptcy proceedings is permitted to appeal a particular order only if the order directly affects his pecuniary interests."  Kane v. Johns-Manville Corp. (In re Johns-Manville, Corp.), 843 F.2d 636, 642 (2d Cir. 1988).  In a bankruptcy context, "if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order."  Id.  "As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditor's ability to receive payment of their claims."  Id.

In addition to satisfying the aggrieved person standard, an appellant must also have prudential standing.  This requires that the appellant assert his own legal rights and interests and not those of third parties.  In re Quigley Co., 391 B.R. 695, 705 (S.D.N.Y. 2008) ("[T]he objecting party can only challenge

the parts of the plan that directly implicate its own rights and interests."). Prudential standing is particularly important in a bankruptcy context where one party may seek to challenge the plan based on the rights of third parties who favor the plan. In re Johns-Manville, 843 F.2d at 644. "In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights." Id.

Here, the appellant does not satisfy the aggrieved person standard because, as an equity holder, he does not have a pecuniary interest at stake. Under the Plan, the secured creditors only recovered 42% of their claims and the general unsecured creditors only recovered 9% of their claims. These compromised recoveries clearly indicate that the Debtors, no matter the terms of a plan, were not sufficiently solvent to provide equity holders with a recovery. Indeed, as the Bankruptcy Court noted, the secured lenders were undersecured by more than $350 million. Even if the Plan had attempted to pay the secured creditors in full, any excess value would have gone first to the unsecured creditors, not to equity holders. See 11 U.S.C. § 1129(b)(2)(B). Thus, here where various classes of creditors received less than their full recoveries, the appellant, as an equity holder, has no basis for recovery and, accordingly, no pecuniary interest at stake.

In addition, the appellant's specific objections do not give him standing because the Incentive Plan and the Trade Account Distribution do not implicate his pecuniary interests. The appellant's argument that these Plan provisions improperly diverted recovery away from equity holders is unconvincing. The fact that some of the secured creditors chose to use a portion of their discounted recoveries to fund the Incentive Plan and the Trade Account Distribution does not change the fact that they did not receive the full portion of their claims under the Plan. Even had the secured creditors decided not to establish those plans, the secured creditors still would have received less than their full recovery. Therefore, in either situation, the appellant had no basis for recovery because there were no assets left to be distributed to the equity holders.

The appellant also lacks prudential standing to bring this appeal because he is not asserting his own legal rights and interests. The appellant attempts to argue that the equity holders' interests are implicated by the Confirmation Order because the Incentive Plan and the Management Equity plan, in his view, effectively took away from the potential recovery of the equity holders. He also argues that the Trade Account Distribution unfairly discriminated among the unsecured creditors. However, neither of these arguments demonstrate that the appellant is asserting his own legal rights and interests.

8

The Incentive Plan and the Trade Account Distribution were funded by the secured creditors from their less than full recoveries.  Thus, any legal rights or interests implicated by these provisions would belong to those secured creditors and not to an equity holder like the appellant here.  Similarly, the appellant's complaints about the alleged discriminatory treatment of unsecured creditors implicate the rights and interests of those unsecured creditors, and not those of the appellant.  Moreover, because the equity holders would clearly not have recovered anything in this case, the creditors' rights and interests are the only ones implicated by the Confirmation Order.  It is also relevant to note that the creditors here have indicated their support by voting overwhelmingly in favor of the Plan. See In re Johns-Manville, 843 F.2d at 644.  The appellant, as an equity holder, cannot assert the rights and interests of these third parties.

                              IV

In addition to finding that the appellant lacks standing, the Court also finds that the appeal is equitably moot. The appellees persuasively argue that the appeal should be dismissed as equitably moot because the Plan is substantially consummated and the appellant has not sought a stay.

"An appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned,

                               9

implementation of that relief would be inequitable." Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 325 (2d Cir. 1993) ("Chateaugay I"). "Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented." Deutsche Bank AG v. Metromdedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 144 (2d Cir. 2005); see also Chateaugay I, 988 F.2d at 325 ("These principles are especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies.").

When a reorganization has been substantially consummated,[1] there is a "strong presumption" that an appeal of an unstayed order is moot. Allstate Ins. Co. v. Hughes, 174 B.R. 884, 889 (S.D.N.Y. 1994); see also In re Metromedia Fiber Network, Inc., 416 F.3d at 144; A & K Endowment, Inc. v. Gen. Growth Props., Inc. (In re General Growth Props., Inc.), 09 Civ. 5508, 2010 WL 532504, at *6 (S.D.N.Y. Feb. 16, 2010); Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.), 390 B.R.

---

[1] The Bankruptcy Code defines "substantial consummation" as "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

10

508, 516 (S.D.N.Y. 2008). This presumption may only be overcome when five circumstances are present:

> (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay, Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993) ("Chateaugay II") (internal citations, quotations, and alterations omitted).

Significantly here, courts in this Circuit have emphasized the importance of an appellant seeking a stay. Loral Stockholders Protective Comm. v. Loral Space & Commc'ns Ltd. (In re Loral Space & Commc'ns Ltd.), 342 B.R. 132, 141 (S.D.N.Y. 2006) ("[S]eeking a stay is of the utmost importance to an appellant desiring to preserve an appeal of a confirmation order."). "The failure to seek a stay of the confirmation order pending appeal, with the result that the reorganization is substantially consummated, in particular lends itself to a finding that an appeal is moot." In re Calpine Corp., 390 B.R. at 517. "In the absence of any request for a stay, the question

11

is not solely whether we can provide relief without unraveling the Plan, but also whether we should provide such relief in light of fairness concerns." In re Metromedia Fiber Network, Inc., 416 F.3d at 145 (citing Chateaugay I and II) (emphasis omitted).

Here, it is clear that the appeal is equitably moot because the Plan has been substantially consummated. The appellees have listed the various actions that have been taken in reliance on the Confirmation Order, including making cash distributions to various claim holders under the Plan, issuing stock to holders of Allowed Secured Claims, entering into Exit Financing documents with lenders, appointing a new Board of Directors for the reorganized JRC, signing new management agreements, and making payments to key employees under the Incentive Plan. In light of the significant actions that have already been taken, any efforts by this Court to grant relief in favor of the appellant would disrupt the Plan and adversely affect the interests of numerous other parties. Although the appellant suggests that the Court could grant limited relief by remanding the case to change the Plan as to the equity interests, this is not a viable plan. Providing any degree of recovery to the common stock holders would necessarily take away from the recovery of the other classes. Given the already limited recovery on the part of both secured and unsecured creditors,

this is not a situation where equity holders would have stood to receive any recovery.  See also 11 U.S.C. § 1129(b)(2)(B).

Moreover, the appellant has not sought a stay pending appeal.  The appellant stated that he did not seek a stay because the request would have likely been denied or, had it been granted, it would have required a substantial appeal bond.  However, the Second Circuit Court of Appeals "insist[s] that a party seek a stay even it may seem highly unlikely that the bankruptcy court will issue one."  In re Metromedia, 416 F.3d at 144.  Additionally, the appellant has not pointed to any case that has upheld an appeal under similar circumstances.  Cf. A & K Endowment, 2010 WL 532504, at *5 (dismissing an appeal from a debtor-in-possession financing order where the appellant had failed at least to seek a stay).  Thus, the appellant's failure to seek a stay strongly weighs in favor of dismissing his appeal.

Additionally, the appellant has not satisfied the other Chateaugay factors.  The appellant has presented no viable means by which this Court or the Bankruptcy Court could grant the requested relief without upsetting the Plan.  The appellant suggests remand to the Bankruptcy Court for limited changes to the Plan's treatment of equity holders.  However, the appellant's position overlooks the fact that any changes to the Plan could not be made in isolation.  Because the Plan was a way

of distributing the limited assets of the debtor, any recovery to the equity holders would disrupt the recovery of the secured and unsecured creditors and require an entirely new reorganization plan.  In turn, this potential need for a new plan of reorganization would implicate the other factors and weigh in favor of finding this appeal equitably moot.  Structuring a new re-organization plan would threaten the reemergence of JRC as a revitalized corporate entity because it would undermine the compromises between the debtor and its creditors in the current Plan.  It also potentially threatens JRC's ability to once again secure the required post-petition lending.  Furthermore, unraveling the current Plan and implementing a new plan would be the very definition of knocking the props out from under the current Plan.  Finally, the interests of numerous other parties who have not had notice of this appeal would be adversely affected.  These parties include the lenders under the Exit Financing Documents, approximately 7,500 contractual counterparties, the debtor's various creditors, and the debtor's various employees.  (See Mem. of Law in Supp. of Appellees' Mot. to Dismiss 14.)  Because any change to the Plan would affect the rights and interest of these parties, this factor also weighs in favor of dismissal.

Conclusion

For the reasons stated above, the appelles' motion to dismiss the appeal is **granted**. The Clerk is directed to close Docket No. 6, dismiss the appeal, and close this case.

SO ORDERED.

Dated:   New York, New York
         March 5, 2010

_____
John G. Koeltl
United States District Judge